IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Apr 24, 2014

IN RE:

KELLY VERD NICHOLS and LISA MICHELLE NICHOLS,

    Debtors.

Case No. 12-13089-M
Chapter 7

FRANK AND BARBARA BROYLES LEGACY FOUNDATION,

    Plaintiff,

v.

KELLY VERD NICHOLS and LISA MICHELLE NICHOLS,

    Defendants.

Adv. No. 13-01012-M

## MEMORANDUM OPINION

Section 523(a)(2)(A) of the United States Bankruptcy Code prevents the discharge of a debt incurred as the result of fraud. However, first things first. In order for a bankruptcy court to consider the issue of whether a debt is dischargeable under bankruptcy law, a debt must exist as a matter of state law. In this adversary proceeding, plaintiff claims to have been defrauded in the sum of $267,000. Defendants deny the allegation, and claim that, in any event, no debt exists because plaintiff's time for bringing a fraud action against them has come and gone. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.A. §

1334(b).[1]  Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C.A. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C.A. § 157(b)(2)(I).

## Burden of Proof

Under § 523(a)(2)(A) of the Bankruptcy Code, the burden is on the plaintiff to establish the necessary elements by a preponderance of the evidence.[2]  Exceptions to discharge are to be narrowly construed in favor of the debtor and against the creditor.[3]

## Findings of Fact

The parties to this adversary proceeding are the Frank and Barbara Broyles Legacy Foundation (the "Foundation") and Kelly Verd Nichols and Lisa Michelle Nichols ("Debtors").  The Foundation is a charitable organization formed for the purpose of assisting care givers for those who suffer from Alzheimer's disease.  The Foundation's day-to-day operations are overseen by Betsy Arnold ("Ms. Arnold").  As its core function, the Foundation distributes an Alzheimer's care manual called "the Playbook."  To date, there have been three printings of the Playbook.  The second and third printings were completed by one or more entities controlled by the Debtors.

International Marketing Consultants, LLC ("International") was an Oklahoma Limited Liability Company organized on March 3, 2006.  International's only members were the Debtors.  Debtors had authority to write checks on International's several bank accounts.  International was dissolved as a limited liability corporation in late 2009 or early 2010 and reformed as International

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C.A. § 101 *et seq*. (West 2014).  All other references to federal statutes and rules are also to West 2014 publications.

[2] *Grogan v. Garner,* 498 U.S. 279, 287-88 (1991).

[3] *In re Black,* 787 F.2d 503, 505 (10th Cir. 1986), *abrogated on other grounds by Grogan*, 498 U.S. at 279.

Marketing Consultants, Inc. ("Inc."), an Oklahoma corporation. Debtors also had full and exclusive control of Inc. Mr. Nichols served as Inc.'s president, while Ms. Nichols served as its secretary. Inc. did business under the trade name *Co-Mission Media Group.*

The dispute before the Court stems from the fourth printing (or non-printing, depending upon one's view) of the Playbook (the "Fourth Printing"). The Foundation placed its order for the Fourth Printing with International at some point in 2009. The paperwork stated that the total amount to be paid by the Foundation for the Fourth Printing was the aggregate sum of $445,000, to be paid in the following installments:

    30% Upon printing - $133,500
    30% Upon shipping from China - $133,500
    30% Upon shipping in USA - $133,500
    10% Upon US Delivery - $44,500[4]

There is no evidence before the Court that Debtors, International, or Inc. undertook any efforts with respect to the Fourth Printing. Books were neither printed nor shipped.

On December 14, 2009, an invoice for $133,500 (the "First Invoice") was submitted by Inc. to the Foundation. The First Invoice was submitted to the Foundation at the direction of Mr. Nichols. On May 5, 2010, an invoice for a second $133,500 (the "Second Invoice") was submitted to the Foundation.[5] The First Invoice was paid to Inc. by check dated January 19, 2010.[6] The Second Invoice was paid to Inc. by check dated June 10, 2010.[7] The money was deposited into one or more Inc. accounts. The record does not reveal how the money was spent, but it is clear that the

---

[4] *Plaintiff's Ex. 1.*

[5] *See Plaintiff's Exs. 2 and 3.*

[6] *Plaintiff's Ex. 4.*

[7] *Plaintiff's Ex. 5.*

money was not expended to print a single Playbook.

The First Invoice contained a representation that the Fourth Printing had been commenced at the time payment was sought. The Second Invoice contained a representation that printed books had been shipped from China. Each of these representations was false. No books had been printed (in China or anywhere else), and no books had been shipped. Ms. Arnold learned that these representations were false approximately six weeks after she paid the Second Invoice, and after both the First and Second Invoices were paid. Ms. Arnold did not testify to a specific calendar date when she learned of the false statements in the First and Second Invoices. For purposes of this decision, the Court assumes that Ms. Arnold learned of the false representations no later than August 1, 2010. Notwithstanding this knowledge, the Foundation continued to do business with Inc. (and, as a result, with the Debtors) until sometime in the summer of 2012.

Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on November 16, 2012. In their schedules, the Debtors listed the Foundation as a creditor. In the original schedules, the claim of the Foundation was not disputed. On February 18, 2013, the Foundation filed this adversary proceeding. Shortly thereafter, the Debtors amended their schedules, listing the debt owed the Foundation as "disputed" on the basis that any debt to the Foundation was owed by Inc., and not by the Debtors.

To the extent the "Conclusions of Law" contain any items that should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

## Conclusions of Law

Section 523(a)(2)(A) excepts from discharge any debt

**(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

4

**(A)** false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][8]

In order for § 523(a)(2)(A) to come into play, there must be a debt that is subject to discharge. If there is no debt, there is no issue of dischargeability. The Bankruptcy Code defines a debt as "liability on a claim."[9] A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[10]

The definition of what constitutes a claim is arguably one of the broadest definitions found in the Bankruptcy Code. There is one significant limitation on the definition of a claim: in order for there to be a claim under the Bankruptcy Code, it must be actionable under applicable state law. In the words of the United States Court of Appeals for the Tenth Circuit:

> [W]e agree with the analysis of *In re Moran,* 152 B.R. 493 (Bankr.S.D.Oh.1993). In that case, the creditor had brought suit in state court to establish a debt arising out of certain stock transactions. The complaint in the state court proceeding did not specifically plead the elements of fraud as required by Ohio law. The debtor argued that because the creditor had not pled fraud with specificity, the creditor had not brought the suit within the four year Ohio statute of limitations and the claim of nondischargeability was therefore barred. *Id.* at 494. In a comprehensive analysis, the bankruptcy court noted the distinction that we believe the *Pascucci* and *Taylor* courts overlooked. The *Moran* court observed that
>
>> [t]here is a fundamental flaw in the debtor's position in that it fails to recognize the distinction between a suit brought under state law to enforce state created rights and a suit filed in bankruptcy court to determine dischargeability issues under § 523(a) of the Bankruptcy Code. In bankruptcy court there are two separate and distinct causes of action:

---

[8] § 523(a)(2)(A).

[9] § 101(12).

[10] § 101(5)(A).

> One cause of action is on the debt and the other cause of action is on the dischargeability of that debt, a cause of action that arises solely by virtue of the Bankruptcy Code and its discharge provisions. *Brockenbrough v. Taylor (In re Taylor),* 54 B.R. 515, 517–18 (Bankr.E.D.Va.1985) (quoting 3 Collier on Bankruptcy para. 523.11 at 523–75 n. 9 (15th ed. 1985)).

> Until the debtor filed his petition for relief under the Bankruptcy Code, the plaintiffs obviously had no cause of action under § 523(a)(4).... The only relevant question with respect to Ohio's statute of limitations is whether the plaintiffs sought to enforce their "debt" against the debtor within the period prescribed by the statute of limitations. The debtor does not dispute that the plaintiffs did so. In the instant adversary proceeding, the nature of the alleged debt, i.e., whether the debt is of a type determined by Congress to be nondischargeable, is to be decided by this court.

> *Moran,* 152 B.R. at 495. *Cf. In re Corwin,* 76 B.R. 221, 223 (Bankr.S.D.Fla.1987) ("The applicability of 11 U.S.C. § 523 is a federal question and, therefore, this court is not precluded from finding embezzlement was committed by the debtor even though the state court judgment included only breaches of contract and fiduciary duty.") We likewise find two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations—if suit is not brought within the time period allotted under state law, the debt cannot be established.[11]

*McKendry* is factually dissimilar to the case at bar. In *McKendry*, the underlying claim had been reduced to judgment, albeit upon a theory of contract, not tort. The *McKendry* court held that as long as the underlying debt was viable, a claim under § 523 could proceed. However, the ruling in *McKendry*–namely, that in order for a party to proceed with an action under § 523, a creditor must have a cognizable claim under state law–is equally applicable to this case.

The Foundation did its business with Inc. There is no contractual claim between the

---

[11] *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 336–37 (10th Cir. 1994) (footnote omitted).

Foundation and the Debtors. If Debtors are liable to the Foundation, it is on the basis of fraud.[12] Debtors expressly deny that fraud is present in this case. Debtors also argue that, even if the Foundation possesses a claim against the Debtors for fraud under Oklahoma law, the claim is barred as a matter of Oklahoma law, and that, as a result, the Foundation's claim under § 523(a)(2)(A) must fail.

Under Oklahoma law, "an action for relief on the ground of fraud" shall be brought within two years of the discovery of the fraudulent conduct.[13] The allegedly fraudulent conduct in this case is found in representations contained in the First and Second Invoices–namely, that the books covered by the Fourth Printing had been printed (as represented in the First Invoice) and then had been shipped from China (as represented in the Second Invoice). Each of these representations was false. The books were never printed, and they were never shipped. Ms. Arnold knew that these representations were false on or before August 1, 2010. Under Oklahoma law, the statute of limitations for these fraudulent representations ran on August 1, 2012, some three and one-half months prior to the filing of Debtors' Chapter 7 petition.[14] The Foundation filed no action against the Debtors for fraud prior to August 1, 2012. Debtors have not waived the applicability of the

---

[12] *See Okla. Federated Gold & Numismatics, Inc., v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) ("Under Oklahoma law, an officer may be held liable for the torts that he personally commits."); *Smoot v. B & J Restoration Servs., Inc.*, 279 P.3d 805, 814 (Okla. Civ. App. 2012) ("[C]orporate officers may be individually liable for their tortious conduct even if they are acting on behalf of the corporation and regardless of whether a corporation may be held vicariously liable for the torts of its officers and directors.").

[13] Okla. Stat. Ann. Tit. 12, § 95(A)(3).

[14] Had the statute of limitations expired after the filing of the bankruptcy case, the Foundation may have been able to avail itself of the protections contained in § 108(c). Where, as here, the statute of limitations expires prior to the filing of a bankruptcy petition, § 108(c) does not come into play.

statute of limitations, as the same was pled in their answer to the complaint filed herein,[15] and listed as an issue of law in the pre-trial order jointly submitted by counsel for the Foundation and the Debtors.[16] The Foundation has no valid cause of action against the Debtors, and is therefore entitled to no relief from this Court.

## Conclusion

Under the rules set forth in *McKendry*, the Foundation has no claim against the Debtors under Oklahoma state law, as the statute of limitations has run.  Where there is no claim under state law, there is no debt subject to discharge, and, ergo, no justiciable claim for non-dischargeability. Debtors are entitled to an order dismissing this adversary proceeding with prejudice.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 24th day of April, 2014.

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6723.2

---

[15] *Docket No. 9.*

[16] *Docket No. 38.*